UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESSIE BAILEY, o/b/o J.L.M.,

                    Plaintiff,          Case No. 12-13159
                                       Honorable Bernard A. Friedman
                                       Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [12, 15]**

      Plaintiff Jessie Bailey ("Plaintiff") brings this action on behalf of her minor son, J.L.M., pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying J.L.M.'s application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [12, 15], which have been referred to this court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.     RECOMMENDATION**

      For the reasons set forth below, the court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that J.L.M. is not disabled under the Act. Accordingly, the court recommends that the Commissioner's Motion for Summary Judgment [15] be GRANTED, Plaintiff's Motion for Summary Judgment [12] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the Commissioner's decision be AFFIRMED.

## II.    REPORT

### A.    Procedural History

On January 15, 2010, an application for SSI was filed on behalf of J.L.M., alleging a disability onset date of October 20, 2009.  (Tr. 91-97).  This application was denied initially on March 15, 2010.  (Tr. 36-39).  A timely request for an administrative hearing was filed on J.L.M.'s behalf, and a hearing was held on April 28, 2011, before ALJ Martha Gasparovich.  (Tr. 22-34).  Plaintiff (J.L.M.'s mother) appeared and testified at the hearing, represented by attorney Cynthia Young.  (*Id.*).  On June 24, 2011, the ALJ issued a written decision finding that J.L.M. is not disabled.  (Tr. 8-19).  On May 18, 2012, the Appeals Council denied review.  (Tr. 1-3).  On behalf of J.L.M., Plaintiff filed for judicial review of the final decision on July 18, 2012 [1].

### B.    Background

#### 1.    *Disability Reports*

J.L.M. was born in November of 2005, making him a little more than four years old at the time his application for disability benefits was filed.  (Tr. 92).  In an undated disability report, Plaintiff indicated that J.L.M. was not yet attending school because he was too young to do so. (Tr. 106).  According to Plaintiff, J.L.M. suffered from cancer and first became disabled on October 20, 2009.  (Tr. 102).  Plaintiff indicated that J.L.M. received "testing and surgery" for a lump in his neck at Children's Hospital of Michigan.  (Tr. 103).  At the time of the report, J.L.M. was taking several medications, including Bactrim (to build up his blood count), doxorubicin (part of his chemotherapy treatment), and Zofran (for nausea), as well as prednisolone, vincristine, and Zantac (for unknown reasons).  (Tr. 104).  Side effects from these medications included constipation, loss of appetite, mood changes, hair loss, mouth sores, and low blood count.  (*Id.*).  J.L.M. had undergone several tests, including a neck biopsy (in October 2009), an echocardiogram (in January 2010), and PET scans (between October 2009 and January 2010).

(Tr. 105).

When asked to describe J.L.M.'s daily activities, Plaintiff indicated that, depending on how he was feeling, he might play with his toy cars, watch DVDs, or "sleep a lot."  (Tr. 115). He could be very loving with his three siblings, but at times he engaged in hitting, pushing, biting, kicking, and screaming.  (*Id.*).  Although J.L.M. was only four years old at the time of the report, he was able to perform some chores like putting away his shoes or picking up his toys with his mother's prompting, though he usually did not finish them.  (Tr. 116).  He was taking a lot of medication, and it was difficult to get him to eat.  (*Id.*).  He was able to use the bathroom by himself "sometimes."  (Tr. 117).  He could use complete sentences of four or five words, listen to and retell stories, talk about the past, and his speech could be understood by others some of the time.  (*Id.*).  According to Plaintiff, he did not have any trouble maintaining attention.  (Tr. 116).  In summary, Plaintiff stated:  "[J.L.M.] is going through a LOT.  He is sick most of the day.  He is barely eating.  Spending a lot of time in the hospital.  Does not get to play or interact with other kids."  (*Id.*).

In an undated disability appeals report, Plaintiff reported that J.L.M.'s condition had not changed since the time of his last report.  (Tr. 118).  He continued to receive chemotherapy at Children's Hospital of Michigan, and he had been seen at the Karmanos Cancer Institute for follow-up after receiving radiation treatments.  (Tr. 119).  He had undergone a blood test and a "scan" in March of 2010.  (Tr. 120).  At the time of the report, however, J.L.M. was no longer taking any medications.  (*Id.*).  Plaintiff continued to assist J.L.M. in dressing, bathing, and feeding himself, saying that he was sick frequently and had experienced hospitalizations, a blood transfusion, loss of appetite, fevers, agitation, and loss of emotional control.  (Tr. 121).

3

2.      *The April 28, 2011 Hearing Before the ALJ*

At the April 28, 2011 hearing before the ALJ, Plaintiff testified that J.L.M. was then five years old.  (Tr. 26).  He had been diagnosed with lymphoma, and the doctor had not indicated whether it was in remission.  (Tr. 27).  He had a "port."  (*Id.*).  Plaintiff indicated that, the week before the hearing, J.L.M.'s physician had called with test results, which showed "another enlarged lymph node on the left side of his neck."[1]  (*Id.*).

Plaintiff also testified that J.L.M. was being evaluated for attention deficit hyperactivity disorder (ADHD) and dyslexia, although he had not been diagnosed with either condition.  (Tr. 28).  According to Plaintiff, J.L.M. was having trouble acquiring information (for example, learning spelling words), completing tasks (such as doing his homework), and interacting with others (he was aggressive, had been sent home from school for fighting, and had only one friend in his class).  (Tr. 29-31).

3.      *Medical Evidence*

a.      *Hodgkin's Lymphoma*

J.L.M.'s medical records reveal that, in September of 2009, he was found to have enlarged lymph nodes on the right cervical area and right forearm, and was diagnosed with right cervical and right epitrochlear lymphadenopathy, with no significant previous medical history. (Tr. 151-52).  He was also noted to have had frequent upper respiratory infections and intermittent low grade fevers over the past twelve months.  (Tr. 151).  On October 9, 2009, J.L.M. underwent surgery for the mass in his right neck and multiple right forearm nodules, which had "slowly increased in size."  (Tr. 144, 146-47).  He was diagnosed with stage IIa Hodgkin's lymphoma (Tr. 185), and on October 27, 2009, a Port-a-Catheter was inserted for chemotherapy.  (Tr. 149-50).  A letter from Tina Bryant, LMSW confirms that J.L.M.'s

---

[1] There is no medical evidence of this (or of any other recurrence or relapse) in the record.

diagnosis would require treatment involving six to eight months of chemotherapy (with weekly outpatient visits and frequent inpatient admissions).  (Tr. 133).

On October 23, 2009, J.L.M. had a PET/CT scan from the skull to the thigh, which revealed lymphadenopathy with mildly increased FDG uptake in the bilateral neck and non-FDG-avid lymphadenopathy and multiple foci of calcification in the retroperitoneum.  (Tr. 174-75).

In November 2009, clinic notes reveal that chemotherapy treatment was not causing any problems, and J.L.M.'s lesions and viral symptoms had resolved completely; however, Plaintiff reported that J.L.M. was experiencing behavioral problems.  (Tr. 138).  Other notes reveal a normal clinical examination and blood counts within normal limits, except for some mouth sores for a few days.  (Tr. 139).  The treatment notes state that J.L.M. "continues to do well, active, good appetite.  No fevers/chills/mouth sores…denies constipation, denies extremity pain…"  (Tr. 142).

On December 9, 2009, J.L.M. presented at the Children's Hospital emergency department with a fever of 101, having not eaten well for a few days, and with some throat pain and congestion.  (Tr. 154).  Upon examination, it was noted that he had mild nasal congestion with a sore throat, but no other complaints.  (*Id.*).  A chest x-ray was normal, and urinalysis was negative.  (Tr. 161).  He was admitted in stable condition, diagnosed with febrile neutropenia, and discharged two days later.  (Tr. 160-61, 201-03).  His lab counts were adequate to proceed with chemotherapy the following week.  (Tr. 135).

J.L.M. underwent chemotherapy for five days the following month.  (Tr. 198-200).  A few weeks later, on January 31, 2010, he again returned to the hospital with a fever of 103.8, a runny nose, and a cough.  (Tr. 157).  A chest x-ray was normal, and a urinalysis was negative.

5

(Tr. 158).   He was admitted, but upon examination was found to be stable, and he was later discharged home in stable condition.  (Tr. 159-61, 194-97).

In February 2010, a PET/CT scan from the skull to the thigh revealed no sign of malignancy.  (Tr. 172-73).  An echocardiogram was also normal.  (Tr. 177).  J.L.M. underwent his fourth cycle of chemotherapy beginning on February 16, 2010.  (Tr. 191).  A few weeks later, Plaintiff reported that J.L.M. had been doing well at home, with a normal appetite, oral intake, and activity, no fevers, and his cough had resolved.  (Tr. 188).  His clinical exam was unremarkable.  (Tr. 188-89).  At a follow-up visit a few weeks later, the same was true.  (Tr. 182-87).

One year later, on March 29, 2011, it was noted that J.L.M. had been off chemotherapy for 13 months, off radiation for 12 months, and had no complaints.  (Tr. 178).  It was further noted that a repeat PET/CT scan in February of 2010 "demonstrated complete response to chemotherapy."  (*Id.*).  The most recent CT scan from August 2010 showed no evidence of any disease, and a chest x-ray taken in December 2010 was also negative.  (*Id.*).  Plaintiff reported that J.L.M. was doing well at home, his appetite, oral intake, and general activity were normal, and he had had no fevers.  (*Id.*).  It was noted that his MediPort was supposed to have been removed in December 2010, but Plaintiff had not yet scheduled an appointment for that procedure.  (*Id.*).  It was also noted that chemotherapy had been delayed multiple times (for a total delay of more than four weeks) for nonmedical reasons, such as missed appointments, no transportation, etc.  (*Id.*).  His examination at that time was unremarkable, aside from the fact that he was status post-chemotherapy, and he had warts on his right foot.  (Tr. 180-81).  He was well-nourished, awake, alert, and in no apparent distress.  (Tr. 180).

A Childhood Disability Evaluation Form was completed by Muhammad Ahmed, M.D., a

pediatrician, on March 25, 2010. (Tr. 166-71). Dr. Ahmed found that J.L.M. has a less than marked limitation in the area of health and physical well-being (due to his lymphoma) and no limitations in the other domains. (*Id.*).

*b.*     *ADHD*

With respect to J.L.M.'s ADHD, the only medical evidence in the record consists of a single handwritten note from Dr. David Benjamin at the Detroit Institute for Children, dated June 9, 2011, which states: "[J.L.M.] is being treated here for ADHD. I believe he also has a learning disability – he should be tested by the school psychologist to look into that issue." (Tr. 221). Despite the fact that the ALJ held open the record (Tr. 31-32), Plaintiff did not submit any additional evidence regarding J.L.M.'s alleged mental impairments, including any records of treatment for ADHD, intelligence testing, or school records that would confirm the existence of a learning disability.

*4.*     *School Records and Evaluations*

A "teacher questionnaire" was completed in April of 2011 by J.L.M.'s teacher, Michelle Kain. (Tr. 126-31). At the time, J.L.M. was in kindergarten and was experiencing an unusual degree of absenteeism because of doctor's appointments. (Tr. 126). Based on her observations, Ms. Kain opined that J.L.M. had problems with acquiring and using information; specifically, J.L.M. had a "serious problem" reading and comprehending written material, providing organized oral explanations and adequate descriptions, recalling and applying previously learned material, and applying problem-solving skills in class discussions, and he had a "very serious problem" expressing ideas in written form and learning new material. (Tr. 127). Ms. Kain also opined that J.L.M. had problems in the domain of attending and completing tasks. (Tr. 128). Specifically, she believed that J.L.M. had a "serious problem" with refocusing to task when

7

necessary and carrying out multi-step instructions, and a "very serious problem" focusing long enough to finish an assigned activity or task, completing work accurately without careless mistakes, working without distracting himself or others, and working at a reasonable pace/finishing on time.  (*Id.*).  Ms. Kain also opined that J.L.M. had no problems in the domain of interacting and relating with others.  (Tr. 129).

### C.    Framework for Child Disability Determinations

A child under age eighteen is considered "disabled" within the meaning of the Social Security Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §1382c(a)(3)(C)(i).  The Social Security regulations set forth a sequential three-step process for determining children's disability claims:  first, the child must not be engaged in "substantial gainful activity"; second, the child must have a "severe" impairment; and third, the severe impairment must meet, medically equal, or functionally equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings").  *See* 20 C.F.R. §416.924(a).

To "meet" a listed impairment, a child must demonstrate both the "A" and "B" criteria of the impairment.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 1.  "Paragraph A of the listings is a composite of medical findings which are used to substantiate the existence of a disorder" whereas the "purpose of the paragraph B criteria is to describe impairment-related functional limitations which are applicable to children."  *Id.*  Further, to be found disabled based on meeting a listed impairment, the claimant must exhibit all the elements of the Listing.  *See Elam ex rel. Golay v. Commissioner of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003).

8

If a child's impairment does not "meet" a listed impairment, the impairment may still be medically or functionally equal in severity and duration to the medical criteria of a listed impairment.  *See* 20 C.F.R. §416.926a.  "Medical equivalency is covered by 20 C.F.R. §416.926; functional equivalency is covered by Section 416.926a."  *Vansickle v. Commissioner of Soc. Sec.*, 277 F. Supp. 2d 727, 729 (E.D. Mich. 2003).

"To determine medical equivalence, the Commissioner compares the symptoms, signs, and laboratory findings concerning the alleged impairment with the medical criteria of the listed impairment."  *Walls v. Commissioner of Soc. Sec.*, 2009 WL 1741375, at *8 (S.D. Ohio June 18, 2009) (citing 20 C.F.R. §416.926(a)).  A claimant can demonstrate medical equivalence in any of three ways:

> (1) by demonstrating an impairment contained in the Listings, but which does not exhibit one or more of the findings specified in the particular listing, or exhibits all of the findings but one or more of the findings is not as severe as specified in the particular listing, if the claimant has other findings related to his impairment that are at least of equal medical significance to the required criteria;
>
> (2) by demonstrating an impairment not contained in the Listings, but with findings at least of equal medical significance to those of some closely analogous listed impairment; or
>
> (3) by demonstrating a combination of impairments, no one of which meets a Listing, but which in combination produce findings at least of equal medical significance to those of a listed impairment.

*Evans ex rel. DCB v. Commissioner of Soc. Sec.*, 2012 WL 3112415, at *6 (E.D. Mich. Mar. 21, 2012) (quoting *Koepp v. Astrue*, 2011 WL 3021466, at *10 (E.D. Wis. July 22, 2011)); *see also* 20 C.F.R. §416.926.  "The essence of these subsections is that strict conformity with the Listing Requirements is not necessarily required for a finding of disability.  If a plaintiff is only able to demonstrate most of the requirements for a Listing or if he or she is able to demonstrate analogous or similar impairments to the impairments of a Listing, the plaintiff may nonetheless

still satisfy the standards if the plaintiff can show impairments of equal medical significance." *Evans*, 2012 WL 3112415, at *7 (quoting *Emeonye v. Astrue*, 2008 WL 1990822, at *4 (N.D. Cal. May 5, 2008)).

Regarding functional equivalence, there are six "domains" that an ALJ considers: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. *See* 20 C.F.R. §416.926a. Functional equivalence to a listed impairment exists when the child has an "extreme" limitation in one of the six domains or "marked" limitations" in two of the six. *See* 20 C.F.R. §416.926a(d). An "extreme" limitation exists when a child's impairment(s) interferes "very seriously" with the child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. §416.926a(e)(3)(i). A "marked" limitation results if the child's impairment(s) interferes "seriously" with the child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. §416.926a(e)(2)(i).

### D.    The ALJ's Findings

At step one, the ALJ found that J.L.M. has not engaged in substantial gainful activity since January 15, 2010, the application date. (Tr. 11). At step two, the ALJ found that J.L.M. has the following severe impairments: Hodgkins lymphoma and ADHD. (*Id.*). At step three, the ALJ concluded that these impairments do not meet or medically equal a listed impairment. (*Id.*). The ALJ also found that J.L.M.'s impairments do not functionally equal any Listing because he has "less than marked" limitations in the domains of "attending and completing tasks" and "health and physical well-being," and no limitations in the remaining four domains. (Tr. 14-19).

### E.       Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Commissioner of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Commissioner of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston v. Commissioner of Soc. Sec.*, 245 F.3d 528, 535 (6th

11

Cir. 2001); *Walker v. Secretary of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Commissioner of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

### F.     Analysis

In her motion for summary judgment, Plaintiff raises no specific challenges to the ALJ's decision; indeed, Plaintiff's brief addresses the merits of a different claimant's case.  (Doc. #12 at 7-20 (discussing a claimant whose last name is Benson)).   Worse is that despite the Commissioner pointing out this patent deficiency in her response brief (Doc. #15 at 12), Plaintiff's counsel did not file a reply brief or otherwise attempt to advance any arguments on Plaintiff's (or J.L.M.'s) behalf.   As the Sixth Circuit has recognized, issues raised in a perfunctory manner are deemed waived.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997); *Anthony v. Astrue*, 266 F. App'x 451, 458 (6th Cir. 2008).  It follows, then, that the complete failure to raise *any* issues for review by this court also results in such a waiver.  Nevertheless, because the court finds that J.L.M. should not be penalized for his counsel's unconscionable failing,[2] and for the sake of completeness, the court has conducted an

---

[2] Filing the brief discussing Mr. Benson's (and only Mr. Benson's) condition is a colossal, but potentially explainable mistake, depending on the circumstances which led to the erroneous filing.   What is not understandable is that, after having been advised of this grave error, Plaintiff's counsel took no action to correct it.

independent review of the ALJ's decision.   As a result of that review, and for the reasons discussed below, the court concludes that the ALJ's findings are supported by substantial evidence.

As set forth above, the ALJ found that J.L.M. has a less than marked limitation in the areas of attending and completing tasks and health and physical well-being and no limitations in the other domains.  (Tr. 14-19).  In order for a limitation to be considered "marked" (as opposed to "less than marked"), the child's impairments must interfere "seriously" with his ability to independently initiate, sustain, or complete activities.  *See* 20 C.F.R. §416.926a(e)(2)(i).  Day-to-day functioning may be seriously limited when the impairments limit only one activity or when the cumulative effects of the impairments limit several activities.  *Id.*  A "marked" limitation also means a limitation that is "more than moderate" but "less than extreme."  *Id.*

> 1.    *Substantial Evidence Supports the ALJ's Conclusion that J.L.M. Has a Less than Marked Limitation in the Domain of Attending and Completing Tasks*

The domain of "attending and completing tasks" refers to the ability to focus and maintain attention, and how well a child begins, carries through, and finishes activities, including the pace at which the activities are performed and the ease at which they are changed.  *See* 20 C.F.R. §416.926a(h).  The regulations define "attention" as the ability to regulate levels of alertness and initiate and maintain concentration.  *See* 20 C.F.R. §416.926a(h)(1).  Adjudicators consider whether a child can filter out distractions and remain focused on an activity or task at a consistent level of performance, change focus and then return to the task without frequent reminders, and predict the possible outcomes of actions before acting.   *See* 20 C.F.R. §416.926a(h)(1)(i) and (ii).

Preschool aged children (age 3 to attainment of age 6), such as J.L.M., should be able to pay attention when spoken to directly, sustain attention to play and learning activities, and

concentrate on activities like putting puzzles together or completing art projects.  *See* 20 C.F.R. §416.926a(h)(2)(iii).   They should also be able to focus long enough to do other things independently, such as dressing, feeding, and putting away toys.  *Id.*  They should be able to wait their turn and change activity when a teacher or caregiver says it is time to do something else. *Id.*

In her decision, the ALJ acknowledged Plaintiff's testimony that J.L.M. does not complete tasks in school or at home, as well as Dr. Benjamin's two-sentence note indicating that J.L.M. was being treated for ADHD.  (Tr. 16).  The ALJ assumed, based on this evidence, that J.L.M. has some limitations in the area of attending and completing tasks but then reasonably concluded that, "Without any other evidence, it can only be assumed that any limitations are minimal."  (*Id.*).  As stated above, Plaintiff does not challenge this conclusion.  Moreover, it is supported by the evidence of record.  For example, in a disability report, Plaintiff indicated that J.L.M. does not have any trouble maintaining attention.  (Tr. 116).  She also reported that he can speak in complete sentences of four or five words, listen to and retell stories, and talk about the past, all of which signify that J.L.M. is able to maintain "adequate attention," as defined in 20 C.F.R. §416.926a(h)(1)(ii).  (Tr. 117).  Moreover, J.L.M., at age 4, was able to use the bathroom by himself "sometimes" and could bathe without help "sometimes"; he was unable to dress himself because of his port.  (Tr. 116-17).  There is no evidence in the record that J.L.M. has undergone any intelligence testing or evaluation for learning disabilities, and Plaintiff testified that during kindergarten he learned to write the numbers 1 through 20 (though she said he was expected to be able to do so for the numbers 1 through 80).  (Tr. 29).  Finally, the ALJ noted that she agreed to hold open the record for Plaintiff to submit additional evidence, but none was provided.  (Tr. 14).  Thus, the ALJ's finding that J.L.M. has a less than marked limitation in this

domain is supported by substantial evidence.[3]

> 2.   *Substantial Evidence Supports the ALJ's Conclusion that J.L.M. Has a Less than Marked Limitation in the Domain of Health and Physical Well-Being*

The ALJ also concluded that J.L.M. has a less than marked limitation in the domain of health and physical well-being.  (Tr. 18-19).  She reasoned that while his lymphoma "would necessarily cause some limitation in this area … recent medical evidence of record reveals that he has not had any significant continued problems since chemotherapy treatment." (Tr. 19).  The ALJ also noted that Plaintiff reported that J.L.M. had not had fevers and had been doing well, with a normal appetite, intake, and activity level.  (*Id.*).  Again, Plaintiff articulates no specific challenge to this finding, and it is supported by substantial evidence.

J.L.M. was diagnosed with Hodgkin's lymphoma in October of 2009.  He underwent chemotherapy treatment in late 2009 and early 2010, and treatment notes from that time indicate that he was tolerating chemotherapy well.  (*E.g.*, Tr. 142 (J.L.M. "continues to do well, active, good appetite.  No fevers/chills/mouth sores…denies constipation, denies extremity pain…"), Tr. 207).  Although he was admitted to the hospital on a few occasions during that same timeframe, he recovered relatively quickly.  A few weeks after J.L.M. completed his fourth and final cycle of chemotherapy in February 2010, Plaintiff reported that J.L.M. was doing well at home, with a

---

[3] J.L.M.'s kindergarten teacher, Michelle Kain, completed a "teacher questionnaire" in April of 2011, in which she opined that J.L.M. had problems with attending and completing tasks. (Tr. 128).  Although the ALJ considered this opinion, she gave it only "some weight" because Ms. Kain offered no explanation or detail for her opinion, and there was no other evidence to support it (such as medical records, academic reports, or intelligence tests).  (Tr. 14).  Moreover, although it is certainly not dispositive, the record contains no evidence that J.L.M. has been enrolled in (or even suggested for) special education services or offered similar accommodations. 2009 WL 396025 (S.S.A.); SSR 09-3p, at *3 ("The kind, level, and frequency of special education, related services, or other accommodations a child receives can provide helpful information about the severity of the child's impairments.").  And, as the ALJ noted, J.L.M. had several school absences due to doctor appointments, from which "it could be presumed that he would be a little behind." (Tr. 14).  Taken together, the ALJ gave good reasons for the weight he gave to Kain's opinion.

normal appetite, oral intake, and activity and no fevers.  (Tr. 188).

On March 29, 2011, it was noted that J.L.M. had been off chemotherapy for 13 months and off radiation for 12 months and had no complaints.  (Tr. 178).  It was further noted that a PET/CT scan in February of 2010 "demonstrated complete response to chemotherapy."  (*Id.*). The most recent CT scan from August 2010 showed no evidence of any disease, and a chest x-ray taken in December 2010 was also negative.  (*Id.*).  Plaintiff reported that J.L.M. was doing well at home, his appetite, oral intake, and general activity were normal, and he had had no fevers.  (*Id.*).  His examination at that time was unremarkable.  (Tr. 180-81).  Indeed treatment notes indicated that he was well-nourished, awake, alert, and in no apparent distress.  (Tr. 180).

In addition, Dr. Ahmed reviewed the medical evidence and concluded that J.L.M. has a less than marked limitation in this domain.  (Tr. 169, 171).  The ALJ properly assigned significant weight to this opinion as it was consistent with the foregoing substantial evidence. (Tr. 14); *see* 1996 WL 374185 (S.S.A.); SSR 96-9p (state reviewing physicians are considered experts in evaluating disability).  Thus, the ALJ's conclusion that J.L.M. has a less than marked limitation in the domain of health and physical well-being is supported by substantial evidence.[4]

## III.   CONCLUSION

For the foregoing reasons, the court RECOMMENDS that the Commissioner's Motion for Summary Judgment [15] be GRANTED, Plaintiff's Motion for Summary Judgment [12] be DENIED, and the ALJ's decision be AFFIRMED.


Dated: April 12, 2013                                s/David R. Grand
Ann Arbor, Michigan                                  DAVID R. GRAND
                                                     United States Magistrate Judge

---

[4] The ALJ also concluded that J.L.M. has no limitations in the remaining four domains.  (Tr. 14-18).  Plaintiff has not challenged these findings and, after reviewing the ALJ's decision and the evidence of record, the court concludes that these findings are supported by substantial evidence.

## NOTICE

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 12, 2013.

s/Felicia M. Moses
FELICIA M. MOSES
Case Manager

17